# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAFAYETTE DIVISION

| | | |
|---|---|---|
| **JERMAINE MARLON LONDO** | \* | **CIVIL ACTION NO. 10-0450** |
| **VERSUS** | \* | **JUDGE DOHERTY** |
| **COMMISSIONER OF SOCIAL SECURITY** | \* | **MAGISTRATE JUDGE HILL** |

## REPORT AND RECOMMENDATION

This social security appeal was referred to me for review, Report and Recommendation pursuant to this Court's Standing Order of July 8, 1993. Jermaine Marlon Londo, born February 6, 1973, filed an application for supplemental security income on June 21, 2007, alleging disability since June 21, 1999[1] due to a back injury, skin allergies, and vision problems.

## FINDINGS AND CONCLUSIONS

After a review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. § 405(g), I find that there is substantial evidence in the record to support the Commissioner's decision of non-disability and that the

---

[1] The claimant filed a previous application in which he was awarded disability benefits effective June 21,1999, based on a. mental disorder. After the claimant was incarcerated, the Social Security Administration discontinued his benefits. [rec. doc. 9, p. 2]

Commissioner's decision comports with all relevant legal standards. *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

In fulfillment of Fed. R. Civ. P. 52, I find that the Commissioner's findings and conclusions are supported by substantial evidence, which can be outlined as follows:

**(1) Consultative Psychological Examination by David E. Greenway, Ph.D., dated September 13, 2007.**  Dr. Greenway considered the information provided by claimant to be of poor reliability, because the results of a test designed to detect feigning were positive. (Tr. 251).

Claimant's gait was normal and his posture was erect. (Tr. 252). He showed no indication of any sensory or motor handicap, and he appeared to see and hear well enough for social interaction. (Tr. 252). His insight and judgment appeared adequate; his social skills, although limited, were also adequate.

Claimant malingered on testing. (Tr. 253). His effort was poor. Overall, his intelligence was estimated as no lower than the low average range of intellectual functioning.

Dr. Greenway's diagnoses were malingering and antisocial personality disorder. A non-genuine presentation of mental health problems was obvious. He concluded that claimant should be able to maintain employment. (Tr. 253)

**(2) X-Ray Scan Interpreted by Leon Lastrapes, III, M.D., dated**

**November 27, 2007**. Claimant's bone structure was deemed normal for his age. (Tr. 278). His intervertebral disc spaces were of normal volume with no degeneration, his posterior elements were intact, and his soft tissues were normal. (Tr. 278).

**(3) Consultative Medical Examination by Kenneth A. Ritter, Jr., M.D., dated December 13, 2007.** Claimant complained of mental problems with anxiety and depression; a back injury resulting from falling out of his bunk in prison; skin peeling around his mouth in winter, and decreased vision. (Tr. 280). His medications included Amitriptyline and Quetiapine.

On examination, claimant's vision was 20/20. (Tr. 281). He had a normal gait and station. (Tr. 281). Dr. Ritter elevated claimant's right lower leg to 90 degrees with no significant problems. (Tr. 281). He was neurologically intact.

In the Medical Assessment of Ability to do Work-Related Activities, Dr. Ritter determined that claimant had no exertional limitations. (Tr. 283). He could perform all postural activities frequently.

**(4) Claimant's Administrative Hearing Testimony**. At the hearing on January 28, 2009, claimant testified that since his release from prison on June 2, 2007, he had held two jobs, the first involving dishwashing and janitorial duties, and the second dealing with labor. (Tr. 20). He was released from both positions

within a month and a half, and a week, respectively.  (Tr. 20).

Claimant did not have a driver's license.  (Tr. 22).  He reported that he was living with his grandmother, who was also helping him financially.  (Tr. 20-21).

As to complaints, claimant testified he had a history of back problems.  (Tr. 22).  He also reported problems with depression and nervousness.  (Tr. 22-23).

As to medications, claimant testified that he was given medication to help him sleep, and that his doctor had changed one of his medications in the past week.  (Tr. 22-23).  He reported that he was currently seeking  mental health treatment at Iberia Comprehensive Community Health Center.  (Tr. 24).

Regarding limitations, claimant reported that he has memory problems and sometimes is unable to maintain focus on the tasks he performs.  (Tr. 23).  He also reported trouble sleeping.  (Tr. 22)

**(5) Administrative Hearing Testimony of William M. Stampley, Jr., Vocational Expert ("VE")**. The ALJ asked Mr. Stampley to suggest an unskilled job at any exertional level, which would be non-production and involved no more than incidental contact with the public.  (Tr. 21).  In response, Mr. Stampley identified the jobs of hospital cleaner, of which there were 7,039 jobs statewide and 459,003 nationally, and laundry bagger, of which there were 1,464 positions statewide and 1,464 nationally.

**(6) The ALJ's Findings are Entitled to Deference**. Claimant argues that the ALJ erred in failing to consider his exertional impairment due to his back problems when presenting the case to the vocational expert.[2]

The Fifth Circuit has considered the question of under what circumstances a vocational expert's answer to a hypothetical question posed by an ALJ can provide substantial evidence supporting a denial of benefits. *Boyd v. Apfel*, 239 F.3d 698, 707 (5th Cir. 2001) (*citing Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994)). In *Bowling*, the court stated as follows:

> Unless the hypothetical question posed to the vocational expert by the ALJ can be said to incorporate reasonably all disabilities of the claimant recognized by the ALJ, and the claimant or his representative is afforded the opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the vocational expert any purported defects in the hypothetical questions . . . a determination of non-disability based on such a defective question cannot stand.

*Id*. at 436.

Here, claimant's assertions of back pain are not substantially supported by the record as there is no medically objective physical evidence showing an existence of back problems or injuries. While the record contains several

---

[2]Although claimant has not alleged error regarding the assessment of his mental impairment, the records from his treating physician indicates that his condition is controlled with medication. (Tr. 303).

instances of claimant complaining of back pain, an x-ray scan of claimant's lumbar spine reviewed by Dr. Lastrapes indicated that the bone structure for plaintiff's age was normal, as were the intervertebral disc spaces, posterior elements, and soft tissue. (Tr. 278). During a consultive examination, Dr. Ritter observed that claimant could elevate his lower leg to 90 degrees without significant problems, and also that claimant had a normal gait and station. (Tr. 281).

It is well established that the ALJ is not bound by VE testimony which is based on evidentiary assumptions ultimately rejected by the ALJ. *See Owens v. Heckler*, 770 F.2d 1276, 1282 (5th Cir.1985); *Falls v. Apfel*, 2000 WL 329233, *7 (E.D. La.2000). Accordingly, the ALJ did not err in failing to include his back complaints in the hypothetical to the VE.

Also significant is claimant's lack of credibility. As noted by the ALJ, Dr. Greenway stated that a disingenuous presentation of mental health problems was obvious during claimant's mental status exam and clinical interview. (Tr. 12). His diagnosis was malingering. (Tr. 253). It is well established that the ALJ's assessment as to claimant's credibility is entitled to great deference. *Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000). Accordingly, claimant's argument lacks merit.

Based on the foregoing, it is my recommendation that the Commissioner's decision be **AFFIRMED** and that this action be **DISMISSED** with prejudice.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) business days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FACTUAL FINDINGS AND/OR THE PROPOSED LEGAL CONCLUSIONS REFLECTED IN THIS REPORT AND RECOMMENDATION WITHIN FOURTEEN (14) DAYS FOLLOWING THE DATE OF ITS SERVICE, OR WITHIN THE TIME FRAME AUTHORIZED BY FED.R.CIV.P. 6(b), SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING THE FACTUAL FINDINGS OR THE LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT, EXCEPT UPON GROUNDS OF PLAIN ERROR.  *DOUGLASS V. UNITED***

*SERVICES AUTOMOBILE ASSOCIATION*, **79 F.3D 1415 (5TH CIR. 1996).**

    Signed July 25, 2011, at Lafayette, Louisiana.

                                                                           C. MICHAEL HILL
                                                                          UNITED STATES MAGISTRATE JUDGE